Awilda MOY, Horatio Francis, Margaret Beaulieu, and Olivia Lewis, individually and on behalf of all others similarly situated, Plaintiffs,

v.

ADELPHI INSTITUTE, INC., Albert A. Terranova, David Ruggieri, Jule J. Goldberg, Richard D. Griffiths, Thomas C. Creasy, Jr., Gaspar V. Garcia, John Doe, Jane Doe and John Doe, Inc., Defendants.

No. 87–CV–1578(SJ).

United States District Court,
E.D. New York.

Oct. 14, 1994.

Roger Netzer, Wilkie Farr & Gallagher, New York City, for plaintiffs.

John C. Gray, Jr., Brooklyn Legal Services Corp. B by Elizabeth M. Imholz, Jane Greengold Stevens, Gerald L. Shargel, Robert L. Ellis, Shargel & Futerfas, New York City, for Melany and Albert Terranova.

## MEMORANDUM & ORDER

JOHNSON, District Judge:

### INTRODUCTION

Albert Terranova and Melany Terranova [hereinafter "Defendants"] move to dismiss the first, second, fourth, fifth, seventh, and eighth claims of the Complaint brought by Awilda Moy, Horatio Francis, Margaret Beaulieu, Jeanette Mitchell, and Olivia Lewis, individually and on behalf of all others similarly situated [hereinafter "Plaintiffs"].

Defendants assert that the Complaint must be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a cause of action upon which relief can be granted.

For the foregoing reasons, the Court grants Defendants' motion to dismiss claims two, five, and eight for failure to state a cause of action for which relief may be granted. The Court, however, denies Defendants' motion to dismiss claims one, four, and seven, and also denies Defendants' motion to strike particular averments of the Complaint as immaterial.

## BACKGROUND

On May 15, 1987, Awilda Moy, Horatio Francis, Margaret Beaulieu, Jeanette Mitchell, and Olivia Lewis individually and on behalf of all others similarly situated, brought a class action suit against Adelphi Institute, Inc. ("Adelphi"), Albert Terranova, Melany Terranova, David Ruggieri, Jule J. Goldberg, Richard D. Griffiths, Thomas C. Creasy, Jr., Gaspar V. Garcia, John Doe, Jane Doe, and John Doe, Inc., alleging eight causes of action. Plaintiffs allege that Adelphi marketed itself as a respectable vocational school equipped to train students in areas that would improve their candidacy for employment. Plaintiffs assert that Defendants engaged in a fraudulent interstate scheme which detrimentally affected Plaintiffs, and that the Defendants unjustly enriched themselves without providing the skills and jobs promised to the students.

The named Plaintiffs share characteristics with each other and with the majority of Adelphi's student body. As illustrated by the following brief biographies, all Plaintiffs have little or no education and most rely on governmental assistance as a primary source of income.

Plaintiff Awilda Moy enrolled at Adelphi from approximately February 1984 through March 1985 in the Junior Computer Programming program. Ms. Moy, whose educational background is the eighth grade, supports herself and her two children on public assistance benefits.

Plaintiff Horatio Francis enrolled at Adelphi from approximately June 1986 through March 1987 in the Junior Computer Programming and Junior Accounting programs. Mr. Francis does not have a high school diploma or G.E.D.

Plaintiff Margaret Beaulieu enrolled at Adelphi from approximately September 1985 through January 1987 in the Computer Programming/Business Administration program. Ms. Beaulieu supports herself and her two minor children on public assistance benefits.

Plaintiff Jeanette Mitchell enrolled as a student from approximately May 1985 through July 1985 in the Executive Secretarial program. Ms. Mitchell does not have a high school diploma or G.E.D. Plaintiff Olivia Lewis enrolled in the school from approximately May 1984 through March 1986 in the Clerk Typist program. Ms. Lewis does not have a high school diploma or G.E.D.

Defendant Adelphi is a corporation organized and existing under the laws of New York with its principal place of business in New York City. Adelphi directs private business and data processing schools throughout the United States, claiming to provide training to prepare students for occupations in accounting, business administration, secretarial services, computer programming, and word processing. Adelphi owned and operated six branches in New York City, and some or all of Defendants own and operate an interstate network of business and vocational schools throughout the United States.

Defendant Albert A. Terranova is the Chairman of the Board of Directors and the Chief Executive Officer of Adelphi. Defendant Melany K. Terranova is the Secretary and a Director of Adelphi. Mr. Terranova and Mrs. Terranova are husband and wife and own 100% of the outstanding capital stock of Adelphi.

Defendant David T. Ruggieri is a Vice President and Marketing Director of Adelphi and is responsible for training and supervising Adelphi's New York City admissions representatives. Defendant Jule J. Goldberg is the President and a director of Adelphi. Defendant Richard D. Griffiths is the Comptrol-

ler and a director of Adelphi. Defendant Thomas C. Creasy, Jr. is Vice President, legal counsel, and a director for several Adelphi facilities. Defendant Gaspar V. Garcia has served as the director of two of Adelphi's branches.

Defendants John Doe, Jane Doe, and John Doe, Inc. are individuals and business organizations whose identities are presently unknown to Plaintiffs, but whose activities are alleged to violate RICO. In addition, all or some of the Defendants were involved with and/or held positions at Adelphi's out-of-state affiliates.

Plaintiffs allege that Adelphi did not provide the vocational training and placement services promised to enrolling students. Instead, Adelphi allegedly served as a vehicle through which Defendants unlawfully obtained large sums of federal and state student grant monies and federally guaranteed student loan funds. Plaintiffs further allege that Defendants' income was derived primarily from government grants and student loans.

Adelphi published catalogs in 1983–86 which detailed Adelphi's primary objective as providing the "highest quality of training for entry level and advanced positions in business." Later editions represented Adelphi as "the highest quality training for entry level positions in business." The catalogs also asserted that Adelphi was approved for student loan eligibility and that its students might be eligible for financial aid programs such as the Tuition Assistance Program ("TAP"). The catalogs further represented Adelphi's faculty as certified teachers selected for their technical knowledge, practical experience, and teaching ability. Catalogs and other written materials produced by Adelphi allegedly exaggerated the available curricula, instructional equipment, and the placement services.

The Complaint claims that Defendants' recruiters were not licensed by the New York State Department of Education and therefore violated § 5004 of the New York State Education Law. These unlicensed recruiters of Adelphi solicited new students primarily in areas where the poor or the unemployed may be found, such as public assistance income

maintenance centers. For example, Ms. Moy was approached by a recruiter while waiting to obtain a check at the New York City Human Resources Administration's Linden Income Maintenance Center. The recruiter allegedly showed Ms. Moy newspaper clippings purporting to illustrate how much money she could make as a computer programmer. Recruiters convinced Ms. Moy to borrow money to finance a $2,850 study program at Adelphi.

The unlicensed recruiters capitalized on the vulnerability of Plaintiffs who were dependent on government assistance. For instance, when Ms. Lewis was approached by recruiters she told them that in an effort to end her dependence on public assistance she had already enrolled in a free job training program. Adelphi recruiters persuaded Ms. Lewis to forego the free training and to incur indebtedness to finance a $3,611 Adelphi program instead.

The Complaint avers that Defendants and/or their agents systematically made fraudulent representations to potential students by advising that (1) jobs were available which they would be qualified for upon completion of their studies at Adelphi; (2) state and federal grants would cover the costs; and (3) a G.E.D. would be given as part of Adelphi's program. Plaintiffs allege that these representations violate both the federal education laws and the rules and regulations promulgated thereunder.

Plaintiffs allege that Adelphi breached its enrollment agreements and contradicted its written representations by failing to provide the vocational training promised. Among the breaches alleged are: (1) assigning classes to teachers who were often absent and were not replaced by qualified substitutes; (2) assigning classes to teachers who were not licensed, not competent English-speakers, or not trained or educated in the area in which they were purportedly instructing; (3) not providing the specific course and numbers of hours of instruction promised; and (4) not furnishing the equipment required to complete the curriculum or denying students sufficient access to available equipment. In addition, Adelphi allegedly did not

provide students the promised placement services.

Once recruited, Plaintiffs obtained student loans to pay for their classes. Adelphi is a participant in the TAP program and the Guaranteed Student Loan program, and the majority of its students are recipients of Pell federal grants. The Office of the State Comptroller of New York prepared an audit report in February 1986, in which it determined that $2.9 million of TAP funds provided to Adelphi were subject to refund to the State of New York because Adelphi had not followed the pertinent rules and regulations of the Commissioner of Education of the State of New York. The Comptroller based its determination on the fact that students were not receiving the minimum hours of instruction, Adelphi's records were poorly maintained, course were held for fewer hours than the number for which they were approved, and that students were graduating despite incomplete and failing grades and dropped courses. Further audits revealed that Adelphi had certified TAP grants for approximately seventy-six students after they had withdrawn from Adelphi. In addition, Adelphi utilized the United States Postal Service and interstate wire to process and receive student loans.

Plaintiffs allege that because they did not receive the education promised, they suffered damages which include the value of their lost time while enrolled in Adelphi, monies paid toward tuition, and the amount of their indebtedness as a result of the loans.

## DISCUSSION

### I. Standard of Review

█ A motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure should be granted only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Green v. Maraio,* 722 F.2d 1013, 1015–16 (2d Cir.1983) (quoting *Conley v. Gib-*

*son,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). The court must accept as true all material facts well-pleaded in the complaint and must make all reasonable inferences in the light most favorable to the plaintiff. *In re Energy Sys. Equip. Leasing Sec. Litig.,* 642 F.Supp. 718, 723 (E.D.N.Y. 1986).

### II. Civil RICO

#### A. Rule 9(b) Fraud Must be Pled with Particularity

█ Defendants seek to dismiss Plaintiffs' first claim pursuant to Rule 9(b) of the Federal Rules of Civil Procedure [1] for failure to plead fraud with particularity. Defendants assert that Plaintiffs fail to identify where, when, and by whom the allegedly fraudulent statements were made. Def.'s Mem. in Supp. of Its Mot. to Dismiss at 7 [hereinafter Def.'s Mem.]. Defendants also contend that the Complaint does not provide adequate notice because it fails to articulate the specific fraudulent acts committed by each Defendant as required for a RICO claim. *Id.* at 8.

Rule 9(b) requires pleadings to specify "the statements it claims were false or misleading, [to] give particulars as to the respect in which the plaintiff contends the statements were made fraudulent, [to] state when and where the statements were made, and [to] identify those responsible for them." *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989). The purpose of Rule 9(b) is twofold. First, it "protect[s] potential defendants from the harm that comes to their reputations when they are charged with the commission of acts involving moral turpitude." *Gross v. Diversified Mortgage Investors,* 431 F.Supp. 1080, 1087 (S.D.N.Y.1977). Second, Rule 9(b) serves to ensure that the allegations of fraud are concrete and particularized enough to give notice to the defendants of "what conduct is complained of and to prepare a defense to such claim of misconduct." *Rich v. Touche Ross & Co.,* 68 F.R.D. 243, 245 (S.D.N.Y.1975); *Airlines Reporting Corp. v. Aero Voyagers, Inc.,* 721 F.Supp. 579, 582

---

1. Rule 9(b) of the Federal Rules of Civil Procedure states the following:

 In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally.

(S.D.N.Y.1989) (quoting *Goldman v. Belden,* 98 F.R.D. 733, 735–36 (S.D.N.Y.1983)); *see also Bharucha v. Reuters Holdings PLC,* 810 F.Supp. 37, 41 (E.D.N.Y.1993) (quoting *Ross v. A.H. Robins Co.,* 607 F.2d 545, 557 (2d Cir.1979)).

On a Rule 9(b) motion to dismiss, the court must "read the complaint generally and draw all inferences in favor of the pleader." *Cosmas,* 886 F.2d at 11. In the case at bar, it appears that the pleadings were specific enough to give Defendants a reasonable opportunity to answer the Complaint which Defendants did—more than six years ago. Moreover, the fraudulent allegations contained in the Complaint are specific enough to give defendants notice of the "who, what, where, and when." The Complaint details alleged misrepresentations, made both individually to the Class representatives and in the school's catalogues, which this Court finds satisfies the requirements of Rule 9(b). Compl. ¶¶ 29–32, 35–37, 45–46.

Defendants contend that although the Complaint alleges that they and/or their agents made fraudulent representations, it does not connect individual speakers to the alleged fraudulent statements. As a result, "there is not one single instance throughout the Complaint in which any defendant is alleged to have acted individually." Def.'s Mem. at 7. We disagree for several reasons.

First, courts do not require plaintiffs "to pinpoint precisely who uttered the statements" before the parties begin discovery. *In re Ann Taylor Stores Sec. Litig.,* 807 F.Supp. 990, 1004 (S.D.N.Y.1992); *see Devaney v. Chester,* 813 F.2d 566, 569 (2d Cir. 1987) ("the degree of particularity required should be determined in light of such circumstances as whether the plaintiff has had an opportunity to take discovery of those who may possess knowledge of the pertinent facts"). Here, the Complaint conveys "as much detail of the alleged fraud as can be expected before discovery in a case where defendants are alleged to have wilfully concealed and destroyed evidence of their wrongdoings." *Bernstein v. Crazy Eddie, Inc.,* 702 F.Supp. 962, 976 (E.D.N.Y.1988). We find that the lack of greater specificity regarding the function each Defendant performed in the alleged fraudulent scheme is attributable to Plaintiffs' lack of knowledge and information that is in the exclusive control of Defendants. *See, e.g., Block v. First Blood Assoc.,* 663 F.Supp. 50, 52 (S.D.N.Y. 1987). Namely, at the time the Complaint was filed, Plaintiffs could not be required to know the specifics and the extent of the fraudulent scheme within the corporation; rather, we acknowledge that the gathering of this type of information is more suitably left within the dominion of discovery.

◼ Second, an employer can be held vicariously liable for the actions of its employees when the employee acts within the scope of his/her employment. *United States v. Davis,* 666 F.Supp. 641, 643 (S.D.N.Y. 1987). Any actions by an employee in furtherance of the employer's interest are considered by courts to be "acts within the scope of employment." *Id.* Therefore, although the Complaint does not identify the names of Adelphi's recruiters, the Defendants can be held vicariously liable for the representations the recruiters made while trying to solicit students.

◼ Third, the Complaint clearly articulates, to the satisfaction of Rule 9(b), the manner in which Plaintiffs were misled. The class representatives detail where and when they were approached, what the recruiters said, and how they were induced to enroll at the school. Compl. ¶¶ 35–38. Defendants are in a better position than Plaintiffs to know and identify who made the alleged utterances, as it was their employees whom they trained and whom they assigned to work at the particular locations at which the false assertions are claimed to have been made.

Plaintiffs' Complaint satisfies the specificity mandate of Rule 9(b). Accordingly, the first cause of action does not fail for lack of particularity.

## B. Mail and Wire Fraud Must be Pled with Particularity

Defendants contend that Plaintiffs failed to plead mail and wire fraud under RICO with the specificity required by Rule 9(b). Defendants claim that Plaintiffs do not provide the

details necessary to establish that the alleged mailings and wire communications were made in furtherance of the claimed fraud. Defendants also assert that Plaintiffs fail to show that Defendants caused the mailings and wire communications. We disagree.

■ Any uncertainty regarding inferences that may be drawn from a complaint's contentions must be determined in the light most favorable to the plaintiff. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Applying this standard, the Complaint in the instant action establishes a cause of action for mail and wire fraud under civil RICO.

This case is analogous to *Beth Israel Medical Ctr. v. Smith*, 576 F.Supp. 1061 (S.D.N.Y. 1983) [hereinafter *Beth Israel* ]. In *Beth Israel*, the court held that the complaint's failure to include the dates and contents of either mailings or telephone calls did not preclude it from satisfactorily alleging fraud. Despite its omission, the complaint satisfied Rule 9(b) because it specified the nature and operation of a bribery and mail fraud scheme, and it also included the exact dates and amounts of numerous alleged payments.

Like *Beth Israel*, the Complaint here specifies the nature and operation of a scheme to defraud the government and students out of loan monies and the use of the mail system to further the scheme. Compl. ¶¶ 61–67. The failure to describe particular telephone calls or to identify the exact speaker is not fatal to the Complaint as it amply details the existence of a scheme to defraud students, and it also reveals that harm and injury to Plaintiffs was contemplated by the Defendants' plan. *United States v. Winans*, 612 F.Supp. 827, 845 (S.D.N.Y.1985) (quoting *United States v. London*, 753 F.2d 202, 206 (2d Cir.1985)). Plaintiffs also provide ample detail as to the purpose the mailings served within Defendants' scheme. Compl. ¶¶ 62–67; *see McLaughlin v. Anderson*, 962 F.2d 187, 191 (2d Cir.1992). In addition, the Complaint details the total amount of loan money received by Adelphi through the mail system. Compl. ¶¶ 54–59; *see, e.g., City of New York v. Joseph L. Balkan, Inc.*, 656 F.Supp. 536, 545–546 (E.D.N.Y.1987). Accordingly, the Complaint specifies sufficient information to maintain a cause of action alleging mail and wire fraud.

## C. Scienter

■ Defendants claim that the Complaint fails to allege the scienter necessary to maintain a claim of fraud under RICO. First, Defendants contend that the Complaint does not provide sufficient facts to infer that Defendants knew that recruiters made fraudulent representations to potential students. This argument lacks merit for the same reasons as discussed above. Adelphi is held vicariously liable for the actions of its employees when the employee acts within the scope of his/her employment. *Davis*, 666 F.Supp. at 643. As the recruiters were furthering the interests of Adelphi by soliciting new students, Defendants are held liable for the representations made by them, regardless of whether or not they knew of the statements.

■ Under Rule 9(b) Plaintiffs are required to "allege facts which give rise to a strong inference that the [D]efendants possessed the requisite fraudulent intent." *Cosmas*, 886 F.2d at 12–13. A strong inference of scienter may be established either be alleging facts that show a motive for committing fraud and a clear opportunity to do so or by identifying circumstances indicating conscious behavior by defendants. *See, e.g., In re Ann Taylor*, 807 F.Supp. at 1006; *Cosmas*, 886 F.2d at 12–13.

■ Defendants claim that the Complaint fails to make adequate allegations that the proceeds of the alleged fraud flowed to them. Yet, the Complaint alleges facts that allow the Court to infer a motive for committing fraud. The Complaint shows that Defendants had a clear opportunity to commit fraud as government financial aid is readily available to the type of students Adelphi solicited, namely, those who are poor and uneducated. An inference may be drawn that, as executive officers of Adelphi, Defendants had much to gain financially from large student bodies funded by government loans. The Complaint, therefore, meets the criteria set out in Rule 9(b) to establish scienter in a cause of action for fraud.

III. Violation of Title IV of the Higher Education Act

■ Plaintiffs' second claim asks this Court to recognize a private cause of action under Title IV of the Higher Education Resources and Assistance Act ("HEA"), 20 U.S.C. § 1070. Plaintiffs allege that Defendants violated the HEA by not providing the benefits of post-secondary education and not fulfilling the required obligations. Compl. ¶¶ 87–89. This issue is one of first impression for this Court, and after careful review, we find that the HEA does not provide Plaintiffs with a private cause of action.

Plaintiffs concede that the statute does not expressly create a right for Plaintiffs. As such, the burden falls on Plaintiffs to demonstrate that an implied right of action exists. *Superintendent of Ins. v. Bankers Life & Casualty Co.*, 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971). In its Memorandum, Plaintiffs correctly refer to *Cort v. Ash* as the measuring rod for determining whether or not an implied right of action exists under a federal statute. 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). The *Cort* decision established the following criteria to infer that a cause of action exists under a federal statute:

> First, is the plaintiff "one of the class for who especial benefit the statute was enacted,"—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff. And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the states, so that it would be inappropriate to infer a cause of action based solely on federal law.

*Id.* at 78, 95 S.Ct. at 2087 (internal citations omitted). The four factors, however, are not given equal consideration; instead, courts weigh the second and third factors more heavily. *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 145, 105 S.Ct. 3085, 3091, 87 L.Ed.2d 96 (1985).

Plaintiffs rely upon the persuasive precedent found in *DeJesus Chavez v. LTV Aerospace Corp.*, 412 F.Supp. 4 (N.D.Tex.1976). In *DeJesus Chavez*, a student borrower alleged that the defendants violated the HEA by charging her for items not authorized by the HEA, and that the defendants' charge exceeded the maximum interest rate allowable for a student loan. Following the *Cort* analysis, the court declared that a private claim exists under the terms of 20 U.S.C. § 1071.

The *DeJesus Chavez* court regarded the student borrowers as a primary concern of the HEA, and as such, the plaintiff satisfied the first prong of the *Cort* standard. *Id.* 412 F.Supp. at 6. The second prong was satisfied in that Congress did not make an "explicit attempt to deny jurisdiction." *Id.* at 7. The court determined that a private action was consistent with the underlying purpose and declared *Cort*'s fourth criteria met as federal regulation of commerce is not traditionally relegated to state law. *Id.*

This Court disagrees with the analysis set forth in *DeJesus Chavez* as to the third and fourth factors of the *Cort* test.[2] Our holding joins the majority of district courts that also regard *DeJesus Chavez* as excessively broad. *See, e.g., Keams v. Tempe Technical Inst., Inc.*, 807 F.Supp. 569 (D.Ariz.1992); *Jackson v. Culinary Sch.*, 788 F.Supp. 1233 (D.D.C. 1992); *Hudson v. Academy of Court Reporting, Inc.*, 746 F.Supp. 718 (S.D.Ohio 1990); *St. Mary of the Plains College v. Higher Educ. Loan Program*, 724 F.Supp. 803 (D.Kan.1989).

*Cort*'s second prong requires a court to examine whether or not the legislature intended to create or prohibit a private cause of action. The Supreme Court mandates

---

2. The Court agrees with *DeJesus Chavez*'s analysis as to the first prong of the *Cort* criteria. The HEA's primary purpose is to provide access to education. Plaintiffs are members of the class for whose benefit the HEA was enacted as the class members are or were students.

Since the Court finds that the second and third factors of *Cort* are not met, it is unnecessary to discuss the fourth factor.

that "unless such congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist." *Karahalios v. National Fed'n. of Fed. Employees, Local 1263,* 489 U.S. 527, 532–3, 109 S.Ct. 1282, 1286, 103 L.Ed.2d 539 (1989) (quoting *Thompson v. Thompson,* 484 U.S. 174, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988). In addition, when construing a statute, courts should be hesitant to create additional remedies where a statute expressly provides one. *Id.*

Here, Plaintiff offers no evidence of congressional intent to create a private cause of action. Instead, Plaintiffs' Memorandum draws sweeping conclusions that because Congress designed the HEA to meet the special needs of continuing educational adult programs, "Congress unmistakably created rights for the special benefit of individuals in [P]laintiffs' position." Class Pl.'s Mem. in Opp. to Mot. to Dismiss at 42. [hereinafter Pl.'s Mem. in Opp.]. Yet, in 20 U.S.C. § 1094(c)(3)(A) and (B) the statute expressly provides remedies to rectify the very issues raised by Plaintiffs.[3] Without more evidence indicating otherwise, this Court concludes that Congress did not intend to create a private right of action.

The third *Cort* factor requires the Court to consider whether or not implying a remedy for students is consistent with the underlying purposes of the statute. The purpose of 20 U.S.C. § 1070 is "to assist in making available the benefits of postsecondary education to eligible students ... in institutions of higher education." Permitting students to bring suit against institutions which do not provide purported educational services will not further these specific aims.

Despite the decision set forth in *DeJesus Chavez,* the Court concludes that the HEA neither expressly nor impliedly provides Plaintiffs with a private right of action. Accordingly, the second cause of action is dismissed.

## IV. Common Law Fraud, Misrepresentation, and Fraudulent Inducement

Defendants put forth two reasons to dismiss claims four and seven. First, Defendants contend that neither claim is pled with the requisite particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. For the reasons discussed in section I of this opinion, Defendants' contention lacks merit. Second, Defendants argue that Plaintiffs fail to allege a *prima facie* case of fraud. For the foregoing reasons, Defendants' second argument also lacks merit.

To state a claim for fraud in New York, a plaintiff must allege:

(1) that the defendant made a misrepresentation, (2) as to a material fact, (3) which was false, (4) and known to be false by the defendant, (5) that the representation was made for the purpose of inducing the other party to rely upon it, (6) that the other party rightfully did so rely, (7) in ignorance of its falsity, (8) to his injury.

*Computerized Radiological Services v. Syntex Corp.,* 786 F.2d 72, 76 (2d Cir.1986) (quoting *Brown v. Lockwood,* 76 A.D.2d 721, 432 N.Y.S.2d 186, 193 (Sup.Ct.1980)). Defendants assert that Plaintiffs have failed to meet the second factor—pleading a material fact. We disagree.

 The standard for materiality is whether or not "a reasonable man would attach importance [to the fact misrepresented] in determining his choice of action in the

---

**3.** 20 U.S.C. § 1094(c)(3) provides a remedy for the issues presented in Plaintiffs' cause of action. The following are the provisions in pertinent part:

(A) Upon determination ... that an eligible institution has engaged in substantial misrepresentation of the nature of its education program, its financial charges, or the employability of its graduates, the Secretary may suspend or terminate the eligibility status for any or all programs ... until the Secretary finds that such practices have been corrected.

(B)(i) Upon determination ... that an eligible institution—
(II) has engaged in substantial misrepresentation of the nature of its educational program, its financial charges, and the employability of its graduates,
the Secretary may impose a civil penalty upon such institution of not to exceed $25,000 for each violation or misrepresentation.

transaction in question." *Congress Fin. Corp. v. John Morrell & Co.,* 790 F.Supp. 459, 470 (S.D.N.Y.1992) (quoting *List v. Fashion Park, Inc.,* 340 F.2d 457, 462 (2d Cir.1965)). The allegations set forth in the Complaint clearly pass this test.

 The Complaint details several alleged misrepresentations made by Defendants that would certainly influence a reasonable person's decision to attend Adelphi. The alleged misrepresentations included promises that state and federal grants would cover all the costs of their training, Compl. ¶ 38(a), and that a G.E.D. would be given as part of Adelphi's program or that instruction specifically designed to prepare students for graduate equivalency diploma examination would be part of Adelphi's curriculum. *Id.* at ¶ 38(d). Adelphi's catalogue also contained several statements that Plaintiffs contend were fraudulent, such as the representation that Adelphi's faculty was comprised of certified teachers selected for their technical knowledge, practical experience, and teaching ability. *Id.* at ¶ 31. The catalogue also described various curricula available to enrolling students, the availability of modern instructional equipment, and placement services to be provided to students during and after their course of instruction. *Id.* at ¶ 32.

To support their allegations that the above noted representations were false, Plaintiffs assert the following failings by Adelphi:

— Assigning classes to teachers who were often absent and were not replaced by qualified substitutes and by assigning classes to teachers who were not qualified to instruct in the subject assigned because they were unlicensed, not adequately English speaking, or not trained or educated in the area in which they were purportedly instructing. *Id.* at ¶ 45(a).

— Failing to provide the specific courses and numbers of hours of instruction promised. *Id.* at ¶ 45(b).

— Failing to provide the equipment (typewriters, adding machines, computers, etc.) required to complete the curriculum or denying students sufficient access to such equipment. *Id.* at ¶ 45(c).

— Failing to provide promised placement services. *Id.* at ¶ 46.

These assertions adequately establish a *prima facie* case of fraud.

Plaintiffs' reliance upon Adelphi's recruiters and catalogue concerning federal funds, educational facilities, and job placement is a material fact sufficiently pled to establish a *prima facie* case of fraud. Defendants' actions "evidences an intent to create a false impression concerning the education offered at its school" which would certainly affect a reasonable person's decision on whether or not to attend Adelphi. *Indrees v. American Univ.,* 546 F.Supp. 1342, 1349 (S.D.N.Y. 1982). This holds especially true for circumstances such as here, where most of the students recruited were welfare and public assistance recipients desperately seeking to improve themselves.

## V. Educational Malpractice

Defendants assert that the gravamen of the Complaint sounds in educational malpractice, a cause of action not cognizable in New York, and should accordingly be dismissed. Yet nowhere does the Complaint ask this Court to recognize educational malpractice. Instead, the averments to which Defendants point, Compl. ¶¶ 41, 45–48, are advanced by Plaintiffs solely to allege common law fraud, misrepresentation, and fraudulent inducement. If such claims could never be brought against an educational institution such as Adelphi because they could so easily be characterized only as educational malpractice, then no redress could ever be had by similarly situated plaintiffs. Accordingly, Defendants request is denied and these averments are not stricken from the Complaint.

## VI. Negligent Misrepresentation

 Plaintiffs' fifth cause of action alleges negligent misrepresentation. Plaintiffs claim that a "special relationship" existed between the students and Defendants which created a duty in Defendants to speak truthfully to Plaintiffs. This claim, however, cannot be maintained because New York law does not allow for a cause of action based on negligent misrepresentation in the educational context. *Village Community Sch. v. Adler,* 124 Misc.2d 817, 478 N.Y.S.2d 546, 548

(Sup.Ct.1984); *Washington v. City of New York,* 83 A.D.2d 866, 442 N.Y.S.2d 20 (Sup. Ct.1981). New York courts hold that state and federal administrative agencies are better suited to evaluate the quality of education than the judicial system. *Donohue v. Copiague Union Free Sch. Dist.,* 47 N.Y.2d 440, 418 N.Y.S.2d 375, 377, 391 N.E.2d 1352, 1353 (Sup.Ct.1979).

The case at bar is similar to *Paladino v. Adelphi University,* 89 A.D.2d 85, 454 N.Y.S.2d 868 (Sup.Ct.1982).[4] In *Paladino,* the plaintiff brought suit for breach of contract against a private school for failure to provide a quality education. The court did not review the quality of the teaching services because it considered public policy as a bar to a court's interference "with private schools when the controversy requires the examination of the efficacy of the course of instruction." *Id.* 454 N.Y.S.2d at 873. The court's role was not to "enter the classroom to determine whether or not the judgments and conduct of professional educators were deficient," rather these concerns are better addressed by the State Education Department and its commissioner. *Id.*

The *Paladino* court, however, did recognize that liability could be imposed in the following situations:

> If in a case ... a private school were simply to accept a student's tuition and thereafter provide no educational services, an action for breach of contract might lie. Similarly, if the contract with the school were to provide for certain specified services, such as for example, a designated number of hours of instruction, and the school failed to meet its obligation, then a contract action with appropriate consequential damages might be viable.

*Id.* 454 N.Y.S.2d at 873. *Paladino* supports our decision to maintain Plaintiffs common law action for fraud, misrepresentation, and fraudulent inducement. When addressing fraud in this context, the Court "is not required to review any discretionary actions taken as a result of [Defendant's] professional judgement." *Village Community School,* 478 N.Y.S.2d at 548. As such, our determi-

nation that Plaintiffs may not maintain a cause of action of negligent misrepresentation in no way interferes with our holding pertaining to common law fraud.

VII. Breach of Fiduciary Duty

Plaintiffs' eighth cause of action maintains that Defendants undertook to act as fiduciaries with respect to Plaintiffs by enrolling them and accepting government funds on their behalf. Through the alleged misrepresentations and fraudulent acts, therefore, Defendants are alleged to have breached their duty. Defendants, however, deny that they had a fiduciary relationship with Plaintiffs. Instead, Defendants insist that they had a mere business relationship. Defendants, therefore, move this Court to dismiss Plaintiffs' eighth claim charging Defendants with breach of fiduciary duty. We are in accord with the Defendants and hereby dismiss Plaintiffs' eighth cause of action.

A person or institution acts in a fiduciary capacity when

> the business which he transacts, or the money or property which he handles, is not his own or for his own benefit, but for the benefit of another person, as to whom he stands in relation implying and necessitating great confidence and trust on the one part and a high degree of good faith on the other part.

Black's Law Dictionary 625 (6th ed. 1990). In broad terms, a fiduciary relationship is "based upon trust or confidence reposed by one person in the integrity and fidelity of another." *Penato v. George,* 52 A.D.2d 939, 383 N.Y.S.2d 900, 904 (Sup.Ct.1976); *see Beneficial Commercial Corp. v. Murray Glick Datsun, Inc.,* 601 F.Supp. 770 (S.D.N.Y.1985). New York law recognizes a fiduciary relationship in "all cases in which influence has been acquired and abused, in which confidence has been reposed and betrayed." *Id.*

 In the case at bar, a fiduciary relationship does not exist between Plaintiffs and Defendants. Our determination is not premature on a motion to dismiss, although

---

**4.** There is no relation between the school involved in the case at bar and the school involved in *Paladino v. Adelphi University,* 89 A.D.2d 85, 454 N.Y.S.2d 868 (Sup.Ct.1982).

Plaintiffs cite *Deleu v. Scaife* for the proposition that resolution of a dispute regarding the existence of a fiduciary relationship cannot be resolved on a motion to dismiss. 775 F.Supp. 712, 715 (S.D.N.Y.1991). However, the decision in *Deleu* is not a broad precedent, but rather a narrow, fact-specific decision.

In *Deleu*, the plaintiff and defendant shared an employee/employer relationship. Plaintiff brought suit alleging that defendant violated a fiduciary relationship in which she was required to pay federal and social security taxes on plaintiff's behalf and also to remit payments to the unemployment insurance fund as required under New York Labor law. The court held that it was premature to dismiss plaintiff's cause of action because Deleu's pleadings established his involvement in relationship that existed from the assumption of control, responsibility, and trust. *Id.* at 715.

Here, unlike *Deleu*, Plaintiffs do not allege sufficient facts to suggest a fiduciary relationship. Instead, Plaintiffs allege that their trust and confidence was broken by the Defendants misrepresentations. Yet, Plaintiffs merely describe a business relationship, albeit dishonest and one-sided, that does not give rise to fiduciary responsibilities. *Feigen v. Advance Capital Management Corp.*, 150 A.D.2d 281, 541 N.Y.S.2d 797, 799 (Sup.Ct. 1989). Clearly "what is, without more, a conventional business relationship, does not become a fiduciary relationship by the mere allegation." *Payrolls & Tabulating, Inc. v. Sperry Rand Corp.*, 22 A.D.2d 595, 257 N.Y.S.2d 884, 887 (Sup.Ct.1965).

In addition, Plaintiffs contend that 34 C.F.R. § 668.82(a) and (b) acknowledges and creates a fiduciary relationship between students and institutions implementing HEA programs.[5] Plaintiffs therefore allege that as Adelphi administered such financial aid programs it violated its fiduciary duty to students by making misrepresentations concerning the institution.

■ Contending that a fiduciary relationship exists between students and an educational institution under § 668.82 fails for the same reasons that we dismissed Plaintiffs' second claim which asked for a private cause of action under HEA. Section 668.82 creates a fiduciary duty only between the institution and the government agency supplying the federal funding. As such, the only fiduciary duty created by § 668.82 is to see that these funds are properly dispersed. If the institution fails to perform its duty, then only the Secretary can bring suit under § 668.82. *See, e.g., Student Gov't Ass'n v. Wilberforce Univ.*, 578 F.Supp. 935 (S.D.Ohio 1983). To find that the school was a fiduciary to the student would then subvert the HEA by allowing, in effect, a private cause of action which this Court has held cannot be had. Accordingly, we dismiss Plaintiffs' eighth cause of action for failure to state a claim for which relief may be granted.

VIII. Motion to Strike

Defendants move to strike ¶¶ 70–76 from the Complaint pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. These paragraphs detail Defendant Terranova's prior plea to several crimes, including knowingly and wilfully stealing, purloining, and converting to his own use money of the United States that he obtained under false pretenses issued by the U.S. Department of Labor. Complaint at ¶ 70.

■ Rule 12(f) states, in pertinent part, the following:

Upon motion made by a party before responding to a pleading or ... upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any

---

5. 34 C.F.R. § 668.82, which outlines the standard of conduct for the student assistance programs, states the following in pertinent part:
 (a) A participating institution acts in the nature of a fiduciary in its administration of the Title IV, HEA programs.

(b) In the capacity of a fiduciary, the institution is subject to the highest standard of care and diligence in administering the programs and in accounting to the Secretary for the funds received under those programs.

redundant, immaterial, impertinent, or scandalous matter. Fed.R.Civ.P. First, the Court must note the untimeliness of Defendants' motion. The Rule mandates that a motion to strike be made within *twenty days* of service of the pleadings. Here, Defendants waited more than *six years* before filing a motion. Clearly, Defendants' motion is untimely and improper.

 Second, although not obligated to do so, this Court also considers Defendants' motion on its merits. Unless it is obvious that portions of the pleadings "sought to be struck [have] no bearing on the subject matter of the litigation and that [their] inclusion will prejudice the defendant, the complaint should remain intact." *First City Nat'l Bank v. Federal Deposit Ins. Co.*, 730 F.Supp. 501, 514 (E.D.N.Y.1990) (quoting *Grunwald v. Bornfreund*, 668 F.Supp. 128, 133 (E.D.N.Y.1987)). Courts recognize that the decision on whether or not to strike portions of a Complaint based on evidentiary questions, "often may not be made until a trial begins to unfold." *Id.* (citing *Mikropul Corp. v. Desimone & Chaplin–Airtech, Inc.*, 599 F.Supp. 940, 945 (S.D.N.Y.1984)).

The Second Circuit addressed this issue in *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir.1976). On deciding whether or not to strike a Rule 12(f) motion on the ground that the averment was impertinent and immaterial, the Court stated:

> Evidentiary questions, such as the one present in this case, should especially be avoided at such a preliminary stage of the proceedings. Usually the questions of relevancy and admissibility in general require the context of an ongoing and unfolding trial in which to be properly decided. And ordinarily neither a district court nor an appellate court should decide to strike a portion of the complaint—on the grounds that the material could not possibly be relevant—on the sterile field of the pleadings alone.

*Id.* at 892–3. Accordingly, we decline to make a determination at this time whether or not Mr. Terranova's previous charges of fraud are relevant to the case at hand. Whether or not to admit Mr. Terranova's prior convictions is a matter better decided at trial.

## CONCLUSION

Although brought before this Court more than six years after answering the Complaint, this Court finds limited merit in Defendants' motion to dismiss. For the reasons detailed above, this Court dismisses claims two, five, and eight.

SO ORDERED.