James R. WAUGH

v.

**CONNECTICUT STUDENT LOAN FOUNDATION.**

No. 2–92–878(WWE).

United States District Court, D. Connecticut.

April 15, 1997.

Salomone & Morelli by Joseph C. Morelli, Hartford, CT, for plaintiff.

Connecticut Student Loan Foundation by Robin Kipnis, Hartford, CT, for defendant.

*RULING ON MOTION FOR SUMMARY JUDGMENT*

EGINTON, Senior District Judge.

Plaintiff, James R. Waugh, has filed a two-count complaint against defendant, Connecticut Student Loan Foundation ("CSLF") alleging that defendant's denial of his application for a student loan violated the Higher Education Act ("HEA"), 20 U.S.C. § 1011–1146a (Count One) and his Fourteenth Amendment rights to due process and equal protection (Count Two). Pending before the court is defendant's motion for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons set forth below, defendant's motion will be granted.

## Background

CSLF is a private, non-profit, state-chartered agency which acts as a guarantor for student loans issued by private lenders. In 1969 and 1970, plaintiff applied for and received two student loans totaling $3,000 to finance his education at Post Junior College in Waterbury, Connecticut. These loans were issued by Colonial Bank and Trust Company and guaranteed by defendant. Pursuant to each of these loans, plaintiff signed interim promissory notes obligating him to repay the entire amount loaned to him to finance his education.

Following completion of his studies at Post Junior College in 1971, plaintiff's father voluntarily undertook the repayment of plaintiff's loans. Since 1971, plaintiff has had very little contact with his parents and has not discussed the repayment of the loan with his father. In total, 28 payments were made on the loan between 1973 and June, 1975, at which time all payment activity stopped. The outstanding balance on the notes held by Colonial was $2,109.09. Defendant purchased the notes from Colonial on October 15, 1975.

In 1978, plaintiff began receiving Social Security Disability benefits after he was found to be totally and permanently disabled. In 1990, plaintiff was accepted into Yale University through the school's division of special registration. He enrolled at Yale and began taking classes on August 29, 1990. To finance his education, plaintiff applied for student loans under two loan programs both of which are covered by the HEA. On September 10, 1990, plaintiff received a letter from the Yale University financial aid office notifying him that student loans totaling $11,500 had been authorized for him. Subsequently, on October 24, 1990, defendant wrote to plaintiff informing him that his student loan application had been denied because plaintiff had defaulted on his prior loans. Defendant was never made aware of any determination with regard to plaintiff's disability at any time prior to the denial of his 1990 student loan application. After receiving notice of the rejection, plaintiff withdrew from Yale.

## Discussion

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. *American Intern. Group, Inc. v. London American Intern. Corp.,* 664 F.2d 348, 351 (2d Cir.1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986).

Title IV of the HEA created the Guaranteed Student Loan program, now known as the Federal Family Education Loan ("FFEL") program. A succinct description of the program is given by Chief Judge Crabb in *Great Lakes Higher Educ. Corp. v. Cavazos,* 711 F.Supp. 485 (W.D.Wis.1989), aff'd, 911 F.2d 10 (7th Cir.1990).

> Under the [HEA], lenders make low-interest loans subsidized by the federal government to students under the protection of guarantees issued by fifty-eight state or private, non-profit agencies, who are in turn reinsured by the Department of Education.

. . . . .

> The guarantee agency is the link between the lender and the Department of Education. It administers the program at the state and local levels. Its primary function is to issue guarantees to lenders on qualifying loans, for which it collects insurance premiums paid by the lenders but passed on to the borrowers. Guaranty agencies must insure one hundred percent of the amount of these loans.

> When a borrower fails to repay a loan, the lender must first satisfy due diligence collection requirements. It then files a claim with the guaranty agency and the agency pays the claim. It is the agency's obligation to attempt to collect the unpaid

balance of the loans on which it has paid default claims directly from the borrowers.

·    ·    ·    ·    ·

The Department of Education reinsures the guarantees issued by the guaranty agencies and, subject to the applicable laws and regulations, reimburses guaranty agencies who have paid a lender's default claim and have complied with applicable laws and regulations.

711 F.Supp. at 487–88. The Department of Education is given broad enforcement authority to implement the provisions of the HEA and the regulations promulgated thereunder. 20 U.S.C. §§ 1070(b); *L'ggrke v. Benkula,* 966 F.2d 1346, 1347–48 (10th Cir. 1992). For instance, the HEA contains a provision under which the Secretary of Education is given the authority to impose civil fines of up to $25,000 for each violation of the HEA committed by a state guarantee agency. 20 U.S.C. § 1082(g)(1).

■ In Count One, plaintiff has alleged that defendant's decision to deny his application for student Loans was made in violation of the HEA. Defendant argues that summary judgment is appropriate as a matter of law because the HEA does not provide plaintiff with a private cause of action against a state guarantee agency. Both parties agree that the HEA does not expressly provide a private right of action but dispute whether such a right should be implied by the court.

The majority of courts who have addressed this issue have found that no private right of action exists under the HEA. *See e.g., Labickas v. Arkansas State University,* 78 F.3d 333, 334 (8th Cir.1996), *cert. denied,* — U.S. ——, 117 S.Ct. 395, 136 L.Ed.2d 310 (1996); *L'ggrke v. Benkula,* 966 F.2d 1346 (10th Cir. 1992); *Bartels v. Alabama Commercial College, Inc.,* 918 F.Supp. 1565 (S.D.Ga.1995); *Moy v. Adelphi Institute, Inc.,* 866 F.Supp. 696 (E.D.N.Y.1994) *Williams v. National School of Health Technology, Inc.,* 836 F.Supp. 273, 280 (E.D.Pa.1993), *aff'd,* 37 F.3d 1491 (3rd Cir.1994).

■ In these cases, the courts apply the factors articulated in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26, (1975), for determining whether a private right of action should be inferred under a federal statute. The court must consider, among other factors, whether there is any indication of legislative intent, explicit or implicit, to create or deny a private remedy and whether implying such a remedy is consistent with the underlying legislative scheme. *Moy,* 866 F.Supp. at 704 (*citing Cort v. Ash,* 422 U.S. at 78, 95 S.Ct. at 2087–88).

■ Here, the HEA provides the Secretary with broad enforcement powers. As the court in *Bartels* noted, where a statute provides detailed enforcement remedies, there exists the presumption that no private right of action is intended. 918 F.Supp. at 1574. Moreover, an implied right of action would frustrate the legislative intent of the HEA by impeding upon the broad enforcement powers of the Secretary. *Id.; See also, L'ggrke,* 966 F.2d at 1348; *Moy,* 866 F.Supp. at 704–05. Based on the reasoning in these opinions, the court will follow the majority of courts and find that no private right of action exists under the HEA.

■ In Count Two, plaintiff alleges that CSLF's denial of his student loan application deprived him of his property rights without due process and equal protection. Plaintiff's due process claim is premised on defendant's denial of plaintiff's loan application without providing him an opportunity to present evidence establishing his eligibility. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

In this case, plaintiff has not acquired an interest in the benefits of the student loans he applied for in 1990. Pursuant to 34 C.F.R. § 682.207(b)(1) (1990), the lender must receive a guarantee commitment from a state guarantee agency prior to disbursing a loan. Here, no such guarantee was given. Plaintiff never became entitled to receive the proceeds of the student loans. Despite having received an award letter from Yale, plain-

tiff had nothing more than a "unilateral expectation" in receiving the student loans.

Plaintiff's reliance on *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), is unpersuasive. In *Goldberg*, the Supreme Court recognized a property interest of welfare recipients in the continued receipt of their benefits. The plaintiffs had been receiving money through the welfare program and were entitled to a hearing to determine their continuing eligibility before those benefits could be terminated. In contrast, defendant here did not guarantee the student loans and then attempt to terminate plaintiff's benefits. Rather, plaintiff's initial application to defendant for financial assistance was denied. Plaintiff has failed to establish a property interest in receipt of the student loans and is not entitled to the protection of the due process clause.

Plaintiff's argument that he was denied equal protection of the law is similarly without merit. Plaintiff presents two theories to support his claim. Plaintiff contends first that defendant violated the equal protection clause by not providing him with an opportunity to present evidence of his disability and thereby qualify for a discharge of his previous loan debt. This argument is more properly viewed as a claim for a violation of plaintiff's right to due process. As already discussed, this argument is unavailing.

Plaintiff's second theory posits that defendant violated his right to equal protection by denying him an opportunity to make alternate repayment arrangements as required by 34 C.F.R. § 682.200. This argument is really a claim that defendant violated the regulations promulgated under the HEA. As stated above, the HEA does not provide plaintiff with a private cause of action. Plaintiff has failed to indicate any violation of the equal protection clause to the fourteenth amendment.

### Conclusion

For the above-stated reasons, defendant's motion for summary judgment [# 17] is GRANTED.