**Leeland O. WHITE, Plaintiff,**

v.

**The APOLLO GROUP, dba, The University of Phoenix, and Arthur Anderson, Defendants.**

**No. EP–02–CA–0237–DB.**

United States District Court,
W.D. Texas,
El Paso Division.

Jan. 30, 2003.

Leeland O. White, pro se, El Paso, TX, for Plaintiff.

Jeanne C. Collins, Kemp Smith, P.C., El Paso, TX, James K. Mackie, Gerald F. Giordano, Jr., Snell & Wilmer, L.L.P., Tucson, AZ, for Defendant.

### MEMORANDUM OPINION AND ORDER

BRIONES, District Judge.

On this day, the Court considered Defendant the Apollo Group's "Motion to Dismiss," filed in the above-captioned cause on October 22, 2002; Plaintiff Leeland O. White's Objections to Defendant's Motion to Dismiss, filed on October 25, 2002 and October 31, 2002; and Defendant's Reply, filed on November 5, 2002. After due consideration, the Court finds the Motion to Dismiss is well-taken and therefore should be granted and this case dismissed.

### I. BACKGROUND

In January of 2002, Plaintiff applied for a student loan from Defendant. Plaintiff requested approximately $9,200 per semester. Plaintiff's first class, ECO 533, was scheduled to commence on February 5, 2002. On January 24, 2002, Plaintiff received a letter from Defendant notifying

him of a change in his curriculum. The letter allegedly stated that Plaintiff must take another course not listed in Plaintiff's academic plan. Plaintiff alleges that "[t]his to wit; is a swindle by mail taxing Plaintiff out of an additional $375.00" in violation of Title 18 U.S.C. § 1341. Amended Compl. ¶ 3.

On or about February 5, 2002, Plaintiff was notified by Defendant that they had lost his promissory note and that Plaintiff would have to resubmit another one. Plaintiff claims that Defendant's actions were "purposely delaying the financial aid process." Amended Compl. ¶ 4.

Plaintiff claims that he was forced to communicate with Defendants via phone, letters, and facsimile and that they would not see him in person. In addition, Plaintiff claims that Barbara Janawoski[1] and Danny Montoya, financial aid counselors, refused to provide information to Plaintiff concerning financial aid and were thus in violation of Title 20 U.S.C. § 1092(a)(1)(H). Ultimately Plaintiff contacted Mr. Montoya. Mr. Montoya allegedly told Plaintiff that after tuition expenses, the remainder of Plaintiff's financial aid would total $500. Plaintiff claims that he was expecting a total of $9,000 in entitlements and that he "would never have gone to school if the school were going to cost more money than the financial assistance and that under financial condition Plaintiff needed subsistence to live on." Amended Compl. ¶ 6.

On March 4, 2002, Plaintiff received a fax from Ms. Janawoski to which Plaintiff replied by sending an interpretation of the "12 hour rule," 34 CFR § 668.2 and Title 20 U.S.C. § 1088. Plaintiff subsequently made two more inquiries into his financial aid on March 8, 2002 and March 12, 2002. In return, Robert T. Collins, Vice President of Financial Services for Defendant

sent a letter, dated March 13, 2002, to Plaintiff explaining the University's Policy and reason for not providing additional financial aid to Plaintiff. The letter stated:

A review of your application has disclosed that you did not disclose [prior attendance] during the financial aid application process thus the University was not aware of your previous awards. As you have now made us aware of your prior attendance and financial aid, we have reviewed the federal National Student Loan Data System and confirm your previous awards. Accordingly, we have made all appropriate reductions in your awards at the University. Amended Compl. Ex. B.

The letter also exhibited a summary of the funds Plaintiff was previously awarded. Without justification, Plaintiff claims that the summary is incorrect.

On March 12, 2002, Plaintiff received word that his financial aid had been cancelled. Two days later, Plaintiff went to the Santa Teresa Campus and spoke with Randy Lichtenfeld, Vice President, Campus Director. Plaintiff claims that Mr. Lichtenfeld stated that "it is the policy to suspend all University of Phoenix students who threaten it with litigation and who intend on suing them." Amended Compl. ¶ 6. Two days later, Mr. Lichtenfeld sent a letter to Plaintiff, as well as a copy to the Sunland Park Police Department and the Dona Ana Sheriff's Department. In the letter, Mr. Lichtenfeld states

In light of today's incident and the security risk that you pose to students, staff, and faculty, you are administratively suspended from the University of Phoenix until this matter can be resolved. You are hereby notified that you are not permitted on any University of Phoenix property. If you do attempt to enter any University of Phoenix property, we

---

1. The Court is unaware of the exact spelling of Barbara Janawoski's name. Plaintiff first writes her name as Janawoski and then later spells it as Janowoski.

will consider it trespassing and the police will be immediately notified. Amended Compl. Ex. E.

On April 10, 2002, Plaintiff received another letter from Mr. Lichtenfeld stating that Plaintiff was in violation of the University's Student Code of Conduct for making threatening and harassing statements. The letter notified Plaintiff that he may submit written responses before the impanelment of a committee in order to review the charges. On May 14, 2002, the University informed Plaintiff of his expulsion as a result of the committee's findings.

As a result, Plaintiff filed the instant Complaint on June 7, 2002.

In his Complaint, Plaintiff claims Defendants violated the following statutes: (1) the "12 Hour Rule" set forth in 34 CFR § 668.2 ("Definitions") and 20 U.S.C. § 1088 (Higher Education Act, "Definitions"); (2) 20 U.S.C. § 1097(a) (Higher Education Act, "Criminal Penalties" & "In general"); (3) 20 U.S.C. § 1097(d) (Higher Education Act, "Criminal Penalties" & "Obstruction of Justice"); (4) 18 U.S.C. § 287 ("False, Fictitious or Fraudulent Claims"); and (5) 18 U.S.C. § 1341 (Mail Fraud, "Frauds and Swindles"). In relief, Plaintiff seeks $18,500 per year in subsidized and unsubsidized loans for three years totaling $55,200; $31,000 for past student loans; $165,600 for negligence; and $50,000 for pain and suffering.

In the instant Motion, Defendant argues that Plaintiff's allegations fail to state a claim upon which relief may be granted because there is no private right of action for violation of any of the federal statutes cited by Plaintiff. The Court agrees with Defendant. Accordingly, for the reasons set forth below, the Court grants Defendant's Motion to Dismiss.

## II. STANDARD

Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss an action for lack of subject matter jurisdiction. On a motion brought under Rule 12(b)(1), which the Court must consider before any other challenge, *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994), a court must dismiss a cause for lack of subject matter jurisdiction "when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir.1998) (internal quotation marks removed) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir.1996)). Further, the Court applies the same familiar standard used in ruling on a motion under Rule 12(b)(6). In that respect, the Court must limit its inquiry to facts stated in the complaint and the documents either attached to or incorporated in the complaint. *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996). Further, the Court must accept as true all material allegations in the complaint, as well as any reasonable inference to be drawn from them, *Kaiser Aluminum & Chem. Sales, Inc., v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982), and must review those allegations in a light most favorable to the plaintiff. *Piotrowski v. City of Houston*, 51 F.3d 512, 514 (5th Cir.1995); *Garrett v. Commonwealth Mortgage Corp. of Am.*, 938 F.2d 591, 593 (5th Cir.1991). The Court also may "consider matters of which [it] may take judicial notice," *Lovelace*, 78 F.3d at 1017–18, and matters of public record. 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (2d ed.1990).

## III. DISCUSSION

### 1. Plaintiff's Higher Education Act Claims

Plaintiff's alleges that Defendant violated three provisions of the Higher

Education Act: 20 U.S.C. §§ 1070 et seq.; 20 U.S.C. § 1088 and 34 CFR 668.2; and 20 U.S.C. §§ 1097(a) and (d).

The Higher Education Act was enacted to benefit students by providing them with access to education. 20 U.S.C. §§ 1070(a), 1071(a)(1). However, there are factors which militate against implying a private right of action. "The legislative history behind the [Higher Education Act] is silent on the issue of private rights of action. When a statute expressly provides for particular means of enforcement, we must be chary of reading additional ones into it." *Parks School of Business, Inc. v. Symington,* 51 F.3d 1480, 1484 (9th Cir.1995) (citations omitted). As to claims under the Higher Education Act by student borrowers against educational institutions, "[t]he [Higher Education Act] specifies that the Secretary of Education has the power to carry out the Act's purposes; the Secretary has promulgated numerous and comprehensive regulations that regulate educational institutions' compliance with the [Higher Education Act]; and the statute and legislative history do not otherwise suggest congressional intent to create a private remedy." *Labickas v. Arkansas State University,* 78 F.3d 333, 334 (8th Cir.1996) (citing 20 U.S.C. §§ 1070(b), 1082(a)(2), 1082(h); *Parks Sch. of Bus.,* 51 F.3d at 1485; *L'ggrke v. Benkula,* 966 F.2d 1346, 1347–48 (10th Cir.1992). "The implication of a private cause of action would seriously undercut, rather than complement, the Secretary's enforcement powers." *Parks Sch. of Bus.,* 51 F.3d at 1485.

Thus, courts have refused to find a private right of action implied in the Higher Education Act for a student borrower against the educational institution, the lender or the loan guarantee agency to remedy alleged violations of the Higher Education Act in the granting or denial of federal financial aid. *L'ggrke,* 966 F.2d at 1347–48; *Robinett v. Delgado Community College,* 2000 WL 798407 (E.D.La. June 19, 2000); *Waugh v. Connecticut Student Loan Fd.,* 966 F.Supp. 141, 143 (D.Conn. 1997); *Moy v. Adelphi Inst., Inc.,* 866 F.Supp. 696, 704–05 (E.D.N.Y.1994); *Hudson v. Academy of Court Reporting, Inc.,* 746 F.Supp. 718, 721 (S.D.Ohio 1990). If an educational institution violates the Higher Education Act, as Plaintiff alleges, the Secretary of Education has the authority and procedures to handle such violations. *L'ggrke,* 966 F.2d at 1347–48 (citing 20 U.S.C. § 1094(c)(2)(a); 34 C.F.R. §§ 668.84(a), 668.85(a)(1), § 668.86(a)).

Where a statute provides an administrative enforcement mechanism, the presumption is that no private cause of action is intended. Title IV of the Higher Education Act gives extensive enforcement authority to the Secretary indicating that Congress intended this mechanism to be the exclusive means for ensuring compliance with the statutes and regulations. To imply a private right on the part of a student would conflict with the enforcement powers of the Secretary and thus would be inconsistent with the underlying purpose of the statute. Accordingly, the Court agrees with Defendant in that Plaintiff fails to state a claim for which relief may be granted pursuant to the Higher Education Act.

*2. Plaintiff's Mail Fraud Claim*

■ Plaintiff alleges that Defendant violated the Federal Mail Fraud statute, 18 U.S.C. § 1341, because Defendant allegedly mailed Plaintiff a letter "stating that Defendant violated Plaintiff's schedule and that the 3 hour class signed up for [sic] would be substituted for a 1 hour course." Amended Compl. ¶ 4. Similar to the Higher Education Act, there is no private right of action under the Federal Mail Fraud statute. The Mail Fraud statute is crimi-

nal in nature, and it does not create a private right of action. *Bell v. Health–Mor, Inc.*, 549 F.2d 342, 346. Accordingly, Plaintiff's allegations that Defendant violated 18 U.S.C. § 1341 cannot support a claim by Plaintiff and therefore fails to state a claim upon which relief may be granted.

### 3. Plaintiff's Claim Under False Claims Statute

■ Lastly, Plaintiff claims that Defendant violated the Federal criminal "False Claims" Statute by allegedly "claiming student loan funds in excess of its entitlement." Amended Compl. ¶ 2. Originally enacted in 1863, the False Claims Act ("FCA") is the most frequently used of a handful of extant laws creating a form of civil action known as "qui tam."[2] As amended, the FCA imposes civil liability upon "[a]ny person" who, inter alia, "knowingly presents, or causes to be presented, to an officer or employee of the United States Government .... a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a). The defendant is liable for treble damages and a civil penalty of up to $10,000 per claim. *Id.* An FCA action may be commenced in one of two ways. First, the Government itself may bring a civil action against the alleged false claimant. 31 U.S.C. § 3730(a). Second, as is relevant here, a private person may bring a "qui tam" civil action "for the person and for the United States Government" against the alleged false claimant, "in the name of the Government." 31 U.S.C. § 3730(b)(1).

According to § 3730 of the FCA, a "qui tam" claim must contain the following procedural requirements: (1) the action must be brought in the name of the Government; (2) the complaint must be filed *in camera* and under seal; (3) the plaintiff must serve a copy of the complaint and a written disclosure of all material evidence on the Government; and (4) the complaint shall not be served on the defendant until the court so orders. 31 U.S.C. § 3730. In this case, Plaintiff has failed to procedurally comply with the strict requirements of § 3730. Accordingly, this claim must also be dismissed.

### 4. Conclusion

In view of the foregoing, the Court finds that there are no genuine issues of material fact. Therefore, the Court is of the opinion that Defendant the Apollo Group's "Motion to Dismiss" should be granted.

Accordingly, **IT IS HEREBY ORDERED** that Defendant the Apollo Group's "Motion to Dismiss," filed in the above-captioned cause on October 22, 2002, is **GRANTED** as outlined above.

**IT IS FURTHER ORDERED** that Plaintiff Leeland O. White's claims against Defendants are **DISMISSED.**

**IT IS FINALLY ORDERED** that all other pending motions, if any, are **DENIED AS MOOT.**

---

**2.** The term "qui tam," which has been in use for centuries, is short for "qui tam pro domino rege quam pro se imposo sequitur," which means "who brings the action as well for the king as for himself." *Bass Anglers Sportsman's Soc'y of Am. v. U.S. Plywood–Champion Papers, Inc.*, 324 F.Supp. 302, 305 (S.D.Tex. 1971).